John Paul (Mickey) STASEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 1140–83.

Court of Criminal Appeals of Texas, En Banc.

Jan. 30, 1985.

Melvin Gray, San Angelo, for appellant on appeal only.

Gerald A. Fohn, Dist. Atty., San Angelo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted of delivery of a controlled substance, to-wit: cocaine. On a plea of guilty appellant was sentenced to ten years in the Texas Department of Corrections and assessed a $10,000 fine. Subsequent to sentencing, appellant was placed on probation pursuant to Art. 42.12, Sec. 3e(a), V.A.C.C.P., hereinafter referred to as "shock probation." The shock probation was later revoked. Appellant appealed, challenging the original grant of shock probation and alleging that the trial court was without jurisdiction to grant him shock probation, therefore entitling him to jail time credit for the time he was erroneously on probation. The Austin Court of Appeals, in an unpublished per curiam opinion, found that since appellant had filed a motion requesting release on shock probation, he was not without fault in his release, and not entitled to any jail time credit. See *Stasey v. State*, No. 3–83–109–CR, delivered September 14, 1983 (Tex.App.—Austin). We granted appellant's petition for discretionary review to determine the propriety of that holding. We reform and affirm.

On March 31, 1982, appellant pled guilty to delivery of a controlled substance, to-wit: cocaine. On May 13, 1982, appellant's counsel filed a motion for shock probation. Although the motion was filed 43 days after sentencing, the motion specifically requested that no hearing be held or probation granted until June 1, 1982, which would have been the 60th day after sentencing. The trial court granted appellant's motion on May 27, 1982, the 57th day after sentencing. Subsequently, on March 9, 1983, appellant's probation was revoked. On March 14, 1983, appellant was released on an appeal bond.

On June 6, 1983, while this cause was pending on appeal but prior to the record being filed with the Court of Appeals, the trial court entered an order rescinding his order granting shock probation and granting appellant flat time for the time he was out on probation, to-wit: from May 27, 1982, to June 8, 1983. Appellant's appeal bond was rescinded and appellant apparently was incarcerated.

On September 14, 1983, in an unpublished per curiam opinion the Third Court of Appeals held that appellant could not object to the revocation of probation since the trial judge was without jurisdiction to grant shock probation on May 27, 1983. The Court of Appeals further held: "Setting aside the question of the trial court's jurisdiction" to enter the order of June 8, 1983, " 'order correcting sentence' the court erred in giving appellant credit for the time he was erroneously released on shock probation." Slip opinion, p. 2. The Court of Appeals then reformed the sentence to delete the improper grant of jail time credit from May 27, 1982, to June 8, 1983, except for the time from January 26, 1983, through March 24, 1983—the time

appellant was actually confined pending disposition of the motion to revoke.

Initially, appellant makes some unsupported assertions that Texas Department of Corrections is refusing to accept the appellant. Unsupported assertions in a brief present nothing for review. Ground of Error No. 2 is overruled.

Art. 42.12, Sec. 3e(a), supra, is the sole governing statute for the grant of shock probation. Sec. 3e(a) extends the jurisdiction of the trial court for 180 days from the date of execution of sentence. Specifically, Sec. 3e(a) states:

"Sec. 3e(a). For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of sentence actually begins, the judge of the court that imposed such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary."

In *Houlihan v. State*, 579 S.W.2d 213 (Tex.Cr.App.1979), this Court first thoroughly reviewed the shock probation law. This Court held that the grant of jurisdiction in 3e(a) was of a very limited nature. The defendant there was granted shock probation on the 126th day.[1] This Court refused to construe the statute so as to apply the time limits to the mere filing of a motion. The statute specifically speaks to the granting of a motion; thus the fact that appellant's attorney may have *filed* the motion prior to the trial court having jurisdiction to act is not controlling.

There can be no question that the trial court acted without jurisdiction in granting appellant's motion for shock probation on the 57th day. Appellant alleges that said erroneous grant of shock probation was through no fault of his and he should not be penalized for the trial court's error. Appellant rightfully points out that his request for shock probation was timely, and had the trial court adhered to his request that no action be taken until 60 days had elapsed, there would be no error from which to appeal. Under this Court's "erroneous release" doctrine appellant claims he is entitled to jail-time credit for the entire time he was on probation.

This Court has long held that if a defendant through no fault of his own is erroneously released from incarceration he is entitled to flat time credit for the time he was erroneously out of custody. *Ex parte Downe*, 471 S.W.2d 576 (Tex.Cr.App.1971); *Ex parte Tarleton*, 582 S.W.2d 155 (Tex.Cr.App.1979).

However, a corollary to this doctrine is the premise that if the defendant was a "moving factor" in his erroneous release he would not be entitled to credit. In *Ex parte Moneyhun*, 161 Tex.Cr.R. 19, 274 S.W.2d 546 (1955), this Court found that "when appellant's attorney requested his release he became the moving factor and cannot now take advantage of a void order...." Id. at p. 547. *Moneyhun*, supra, however, was a release without any statutory authority. The principal of *Moneyhun* has been applied by this Court in situations similar to the appellant's, where a motion for probation was filed and subsequently erroneously granted. See *Ex parte Massie*, 161 Tex.Cr.R. 568, 278 S.W.2d 851 (1955).

In *Adams v. State*, 610 S.W.2d 780 (Tex.Cr.App.1981), a panel of this Court applied the foregoing principle to an erroneous grant of shock probation and held that since the defendant had requested shock

---

1. As originally enacted the statute extended the trial court's jurisdiction 120 days. In 1981 the legislature, by amendment, extended the trial court's jurisdiction to grant a shock probation to 180 days from the date of execution of sentence.

probation he could not benefit from the erroneous grant of the relief requested. *Adams,* supra, does not indicate whether appellant's motion requesting relief was proper. Likewise, in *Tamez v. State,* 620 S.W.2d 586 (Tex.Cr.App.1981), a panel of this Court found that the granting of shock probation on the 126th day under the old law was void, but the defendant would receive no credit since he had filed a motion requesting release. Again, the opinion does not indicate whether appellant's motion timely requested release.

■ We believe that the foregoing rules penalize a defendant for asserting his statutory right to probation. A defendant should not be penalized if the relief he requests is proper and only through the improper actions of the trial court does the order become void. Thus, if a defendant, who is statutorily eligible for shock probation, requests that the trial court consider his motion within the statutorily defined time limits, and the trial court unilaterally, but erroneously, grants the probation, the defendant is entitled to credit for the time between premature release and the date jurisdiction to grant shock probation attaches. Thus, in the case sub judice appellant is not entitled to all the time he was on shock probation since he requested to be released on June 1, 1982, the day jurisdiction attached in the trial court. He is, however, entitled to the 7 days he was prematurely released from May 27, 1982, to June 2, 1982.

The judgment of the Court of Appeals is reformed, granting appellant jail time credit from May 27, 1982, through May 31, 1982. In all other respects, the judgment of the trial court and the Court of Appeals is affirmed.

ONION, Presiding Judge, dissenting.

Appellant was convicted on March 31, 1982 of delivery of a controlled substance, to-wit: cocaine, on his plea of guilty before the court. The punishment was assessed at 10 years' imprisonment and a fine of $10,000.00. Sentence was imposed on the same date. No appeal was taken. On the same date the trial judge wrote the Department of Corrections that appellant was a candidate for shock probation, but that possibility was being kept from the appellant in accordance with the Department's recommendation.[1]

On May 13, 1982, appellant's counsel filed a motion for shock probation, 43 days after the imposition of sentence on March 31, 1982. The motion expressly recognized that the court did not have jurisdiction until the 60th day after sentence under Article 41.12, § 3e(a), V.A.C.C.P., to grant shock probation, and therefore requested the court to set a hearing "on or after June 1, 1982" and at the hearing to grant the appellant shock probation.

On May 27, 1982, the 57th day after sentencing, the trial judge entered an order granting shock probation stating he was acting pursuant to appellant's motion. There does not appear to have been a hearing or any indication that counsel for the State or appellant were present when the order was entered. Appellant was returned to Tom Green County on June 2, 1982 and released on shock probation subject to certain conditions contained in the order of May 27, 1982.

On January 26, 1983, the State filed a motion to revoke probation alleging that on or about the same date appellant committed the offense of driving a motor vehicle upon a public road while intoxicated. Subsequently on March 9, 1983, a hearing was conducted on said motion. The appellant entered a plea of "true" to the motion's allegations. Evidence was heard. The court revoked appellant's probation. The order in effect, setting aside the suspension of the execution of sentence of March 31, 1982, gave appellant credit only for time in actual confinement. Notice of appeal was given, and appellant was released on an appeal bond.

Appellant's brief on appeal dated June 6, 1983 was filed in the Austin Court of Appeals on June 10, 1983. Appellant ad-

---

1. The appellant had filed no motion for proba- tion prior to his guilty plea.

0

vanced three grounds of error. He complained the court abused its discretion in revoking probation, claiming the evidence showed that because of his drinking problem he could not conform his conduct to the requirements of the probationary conditions. He also urged he was denied equal protection of the laws because some other defendant in Tom Green County had his punishment reduced following revocation of probation.[2] In his third ground he argued the court failed to give him credit for all the time on his sentence to which he was entitled, that the court acted to grant shock probation when it didn't have jurisdiction, and he was released without any fault of his own, and he should be given credit for the time he was on shock probation.

On June 8, 1983 the trial judge (other than the judge who granted shock probation) entered an "Order Correcting Sentence" acknowledging the court had acted prematurely in granting shock probation when it did not yet have jurisdiction, and the appellant was erroneously released from the Department of Corrections, and was entitled to credit for time spent on shock probation, and while free on an appeal bond and until taken into custody by virtue of the order of that date. The appellant was ordered arrested and returned to the Department of Corrections.

Based on such order the State moved to dismiss appellant's appeal.

The Austin Court of Appeals affirmed the conviction reforming the sentence in an unpublished per curiam panel opinion. *Stasey v. State* (Tex.App.—Austin 1983) (No. 3–83–109–CR). Setting aside the question of the trial court's jurisdiction to enter the "Order Correcting Sentence" at the time and under the circumstances, the Court of Appeals held the court erred in giving appellant credit for the time he was erroneously released on shock probation and for the time he was out of custody on appeal bond following revocation of proba-

tion. The State's motion for dismissal was denied. We granted appellant's petition for discretionary review to determine the correctness of the Court of Appeals' decision.

Article 42.12, § 3e(a), V.A.C.C.P., reads:

"For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. Probation may be granted under this section only if:

"(1) the defendant is otherwise eligible for probation under this article; and

"(2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony; and

"(3) the offense for which the defendant was convicted was other than those defined by Section 19.02, 20.04, 22.021, 22.03, 22.04(a)(1), (2), or (3), 29.03, 36.02, 38.07, 71.02 or a felony of the second degree under Section 38.10, Penal Code.

In *Houlihan v. State*, 579 S.W.2d 213 (Tex.Cr.App.1979), this Court reviewed the original enactment of the shock probation law in Texas, and observed that the grant of jurisdiction to the district court was of a very limited nature. There Houlihan was granted shock probation on the 126th day after the execution of the sentence began,

---

**2.** There is no evidence in the record to support such assertions found only in the appellant's brief.

and this Court held the court had lost jurisdiction at the expiration of the 120th day as provided in the original enactment.[3]

In the instant case the court acted prematurely prior to acquiring jurisdiction under the statute, and we are confronted with the question of whether that should affect appellant's claim of time credit on his sentence.

It seems well settled that where a defendant is erroneously or mistakenly released from incarceration through no fault of his own he is entitled to "flat time" credit for the time he was at liberty. *Ex parte Downey*, 471 S.W.2d 576 (Tex.Cr.App.1971); *Ex parte Esquivel*, 531 S.W.2d 339 (Tex.Cr.App.1976); *Ex parte Tarlton*, 582 S.W.2d 155 (Tex.Cr.App.1979); *Ex parte Pizzalota*, 610 S.W.2d 486 (Tex.Cr.App.1980). And this is true even if the releasing institution or official is unaware of the legal impediment to release. *Ex parte Downey*, supra; *Ex parte Tarlton*, supra, or if the release is due to a clerical mistake, *Ex parte Pizzalota*, supra.

It is also true, however, that if the defendant was a "moving factor" in obtaining his improper release he would not be entitled to credit in his sentence. See *Ex parte Moneyhun*, 161 Tex.Cr.R. 19, 274 S.W.2d 546 (1955). Moneyhun was confined for 120 days in jail as a result of three judgments. After he served 41 days, his attorney approached the county judge and requested Moneyhun's release because of his health and on the condition he leave Taylor County. He was released and left the county, but after the expiration of the 120-day-period he returned. The County Judge then ordered him re-arrested and confined to serve the balance of 120 days not previously served. A district judge refused habeas corpus relief and Moneyhun appealed. This Court stated the record was not sufficient to show the County Judge acted under Article 137, V.A.C.C.P. (1925), for health reasons, and decided the case upon the void condition that Moneyhun left the county.

After distinguishing between *Ex parte Griffin*, 158 Tex.Cr.R. 570, 258 S.W.2d 324 (1953), and *Ex parte Morgan*, 159 Tex.Cr.R. 241, 262 S.W.2d 728 (1953), on one hand, and *Ex parte Wyatt*, 29 Tex.App. 398, 16 S.W. 301 (1891), on the other hand, this Court held that when Moneyhun's attorney requested his release he (Moneyhun) became the moving factor and could not take advantage of a void order on the part of the county judge. See also *Ex parte Williams*, 301 S.W.2d 84 (Tex.Cr.App. 1957).[4]

The principle of *Moneyhun* was later applied in *Ex parte Massie*, 278 S.W.2d 851 (Tex.Cr.App.1955). Massie applied for probation, but was convicted and given "straight time." His conviction was affirmed on appeal. The mandate of this Court issued. However, the trial court then granted probation for the first time. In *Massie* this Court held the trial court was without authority to grant probation after issuance of the mandate, and Massie was not entitled to credit for time served on the illegally granted probation. *Moneyhun* was extensively stretched by saying Massie was the moving factor in release on probation after issuance of the mandate because he had filed a pre-trial motion for probation. This was so the court noted because it was incumbent upon the applicant to exclude himself from the rule announced in *Moneyhun*, and the record was silent as to whether release on probation after the issuance of the mandate was the *direct* independent action of the judge or upon a subsequent request for probation by Massie.

---

3. Article 42.12, § 3e(a), was amended in 1981 to extend the court's jurisdiction from the 60th day to the expiration of 180 days, giving the trial courts 60 more days than it had under the original enactment.

4. In *Griffin* the Court was careful to point out that by no conduct on Griffin's part did he escape confinement. In *Morgan* the Court observed Morgan was not personally a moving factor in securing his release which resulted from a secret agreement between prisoner's parents and the judge. In *Wyatt* the prisoner remained at large at his own request.

In *Adams v. State*, 610 S.W.2d 780 (Tex. Cr.App.1981), relied upon by the Court of Appeals in the instant case, this Court applied the rule of *Moneyhun*. There, after Adams was convicted and incarcerated, he timely filed for "shock probation" more than 60 days after sentencing.[5] However, he was not released on shock probation until after the court had lost jurisdiction to grant such a motion. Further, Adams was not eligible for shock probation in view of the conviction for involuntary manslaughter for which the statute prohibits "shock probation." Thus the rule of *Moneyhun* was applicable since Adams was a moving factor in obtaining an improper grant of probation.

*Tamez v. State*, 620 S.W.2d 586 (Tex.Cr. App.1981), involved a bevy of miscues. Tamez filed a pre-trial motion for probation without a specific request for "shock probation." Following his guilty plea before the court, he was assessed a punishment of five years' imprisonment and a $5,000.00 fine. In sentencing on the same day as the plea of guilty, the court granted "shock probation" before it had jurisdiction to do so. It then attempted to sentence Tamez to not less than 60 nor more than 120 days in the Department of Corrections. When the court did release Tamez on "shock probation," it was after the court had lost jurisdiction to do so. In holding Tamez was not entitled to credit on his sentence while on probation, the Court cited *Adams*.

In the instant case the appellant Stasey's attorney filed a motion for "shock probation" before the court had the authority to grant shock probation, but the motion recognized the situation and expressly requested the court to grant the motion on or after the 60-day-period set by statute.

At the outset it should be observed that appellant was eligible for shock probation under the statute in question. And it is clear that while Article 42.12, § 3e, V.A.C. C.P., related to the time limitations upon the court's jurisdiction to grant probation,

it places no limitations upon the filing of a motion for shock probation. The appellant cannot be faulted by the fact his counsel filed a motion prior to the time the court acquired jurisdiction to act, particularly where the motion specifically requested action only after the court acquired jurisdiction. Appellant did not ask for that to which he was not entitled. The court, without the appellant being present, granted the motion prematurely. Appellant was not released from the Department of Corrections until June 2, 1982 and then returned to Tom Green County and was placed on probation more than 60 days after sentencing.

The appellant did not request an improper act. While he acted through his attorney, he was not, under the circumstances, a moving factor in the court's premature action. I would hold that appellant is entitled to credit on his sentence from May 27, 1982 until June 2, 1982, because he was still in confinement on those dates, and that he is entitled to credit for the time he was at liberty on probation, but he is not entitled to the credit for time at liberty on the appeal bond. *Ex parte Allen*, 548 S.W.2d 905 (Tex.Cr.App.1977); *Tamez v. State*, supra.

Thus I would reform the judgment of the Court of Appeals accordingly, and for the same reason dissent from the majority's opinion whose views as to reform of judgment of the Court of Appeals differs.

CLINTON, J., joins this opinion.

TEAGUE, Judge, dissenting.

The issue that is before this Court is whether John Paul (Mickey) Stasey, appellant, is entitled to have the records of the Department of Corrections reflect that his sentence commenced on March 31, 1982, and that he has continuously served his sentence. The question should be answered in the affirmative. I respectfully dissent to the majority's implicit holding that

---

**5.** While the *Adams* opinion does not reflect, an examination of the record in that case shows Adams was sentenced on March 27, 1978, and

the motion for shock probation was filed on July 6, 1978, and granted on August 7, 1978.

the question should be answered in the negative.

The *decision* to unlawfully release Stasey on probation after he had commenced serving his sentence in the Department of Corrections was made solely by the trial judge in this cause and no other person, including Stasey. The record clearly reflects that Stasey had nothing to do with the trial judge's *decision* to order his release, and he did not cause his release; instead, Stasey was released from the Department of Corrections because the trial judge told the authorities to release him, which they did on May 27, 1982. I am quite sure, however, that when the trial judge unlawfully ordered Stasey released to "shock probation", he was acting in good faith, and by this dissent I do not mean to imply or suggest otherwise. But, it makes no difference what prompted his act: When he acted, he was acting without color of authority, or legal authority of any kind.

I believe that every single judicial act that has occurred in Stasey's case since May 27, 1982, is *void ab initio*. Therefore, I agree with the statement the Austin Court of Appeals made in its unpublished opinion, that "Because appellant was never legally on shock probation, he is not in a position to complain of matters in connection with the revocation thereof." However, I believe that Stasey is most certainly entitled to complain of the failure of the authorities to give him the jail time credit that he is legally due on his sentence.

In rejecting Stasey's contention, the majority erroneously relies upon *Ex parte Moneyhun*, 161 Tex.Cr.R. 19, 274 S.W.2d 546 (1955), which in turn erroneously relied upon *Ex parte Wyatt*, 29 Tex.App. 398, 16 S.W. 301 (Tex.Cr.App.1891). What the majority overlooks, in its reliance upon those decisions, is that this Court in *Ex parte Griffin*, 258 S.W.2d 324 (Tex.Cr.App.1953), which the majority neither cites nor discusses, rejected the legal theory that if an official unlawfully orders a prisoner released, the prisoner is to be treated as an escaped prisoner, which is the basis for this Court's holding in *Ex parte Wyatt*, supra,

upon which *Ex parte Moneyhun*, supra, relies, in which this Court stated in part: "... we think the Wyatt case is here controlling." But, the *Wyatt* case cannot be controlling in light of what this Court held in *Griffin*, supra, that such a prisoner is not an escapee. It is only through that legal theory that a prisoner, such as Stasey, can be held not to be continuously serving his sentence. But, Stasey is no more of an escapee than you or I, and the majority does not even suggest or imply that he might be.

It is true that if a defendant, through no fault of his own, is prematurely and erroneously released from incarceration, he is entitled to flat time credit for the time he was out of custody. *Ex parte Morris*, 626 S.W.2d 754 (Tex.Cr.App.1982). This rule of law was originated to overcome the harshness of the rule that, notwithstanding that the prisoner was unlawfully released by the authorities, through no fault of his own, he was deemed to be an escapee. Of course, if it was shown that the release resulted or occurred through some fault on the part of the prisoner, then the prisoner was deemed to be an escapee. However, therein lies the distinction.

In *Ex parte Griffin*, supra, after the defendant had commenced serving his six month misdemeanor sentence, the trial judge in that cause unlawfully ordered the defendant released from the Bowie County Jail and placed on misdemeanor probation. This, he could not lawfully do at that time. Subsequently, the Sheriff of Bowie County arrested the defendant and placed him back in the county jail so that he could serve the remainder of the six months in jail that had been assessed as part of the punishment in the case.

This Court in *Ex parte Griffin*, supra, relying upon *Ex parte Eley*, 9 Okla.Cr.R. 76, 130 P. 821, 823, which it "deemed pertinent and in point," and which it is, held that the defendant Griffin was entitled to be credited for the time that he was at liberty under the probation, notwithstanding the fact that the trial judge was not legally authorized to grant the probation.

In pertinent part, the Court implicitly held that Griffin was not to be treated as an escapee; instead, he was to be treated as a "trusty." It quoted and adopted the following, which the Oklahoma Court had stated in *Ex parte Eley*, supra:

> The petitioner in this case did no more than any other intelligent human being would have done under like circumstances—that is, to go home, when the court who had sentenced him ... told him he could do so—and a rule could not be established, technical or otherwise, holding him to be an escapee and liable to reincarceration, without placing in the hands of county courts, sheriffs, and prosecuting attorneys the power to defeat every judgment of a court of record entered in this state, and permit them to harass and impose upon the unfortunate members of our citizenship, who happen to be convicted and sentenced for a crime, during an endless period, by placing them in jail to-day and releasing them to-morrow, with or without cause, as their caprice might suggest. The petitioner in this case was in the custody of the sheriff and subject to his call at all times until the expiration of the prison sentence, and was in legal effect a 'trusty.' *Ex parte Eley*, supra, at 823.

In this instance, there was no appeal from the original conviction. The judgment and sentence were never lawfully vacated, nor was Stasey ever released from confinement—until the trial judge unlawfully ordered him released from the Department of Corrections to the probation department of Tom Green County.

It is axiomatic that when a judgment and sentence are pronounced, and no appeal is taken, and a commitment issued and the prisoner is delivered to the custody of the Department of Corrections, as occurred in Stasey's case, there are few legal ways that would have enabled him to be lawfully released before his sentence was satisfied. The method by which Stasey's release occurred in this instance is not one of those legal ways. Because the trial judge acted unlawfully, his act of ordering Stasey released from confinement was *void ab initio*. Because Stasey had nothing to do with the trial judge's *decision* to unlawfully order him released from the penitentiary, he was not an escapee. He is entitled to have the records of the Department of Corrections reflect that his sentence commenced on March 31, 1982, and that he has continuously served that sentence. *Ex parte Griffin*, supra. To the majority's decision, which is not supported by any pertinent legal authority, and which holds to the contrary, I respectfully dissent.